UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                              :
                                                     :
v.                                                   :            13 Cr. 688 (JMF)
                                                     :
TORE LARSEN,                                         :            MEMORANDUM
                                                     :            OPINION AND ORDER
                         Defendant.                  :
                                                     :
------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/16/2014
```

JESSE M. FURMAN, United States District Judge:

Defendant Tore Larsen is charged with two counts of securities fraud, in violation of 15

U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 (Counts One and Three); and two counts of

wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two and Four).  He moves, pursuant to

Rule 21(b) of the Federal Rules of Criminal Procedure, to transfer venue to the Middle District

of Pennsylvania, where he resides.[1]  For the reasons stated below, Larsen's motion is DENIED.

## BACKGROUND

The four charges in this case relate to two alleged schemes.  Counts One and Two charge

Larsen with fraud in connection with his solicitation of purported investments in a company

called Darwin Solar, Inc., which was "reportedly incorporated in Pennsylvania and operated in

that state."  (Aff. (Docket No. 13) ¶ 6).  Counts Three and Four charge Larsen with fraud in

connection with his solicitation of purported investments in Facebook, Inc.  According to the

criminal complaint, Larsen defrauded "various victims" in connection with these schemes.  (Aff.,

---

[1]       In the same motion, Larsen moved to dismiss two counts of the Indictment for lack of
venue.  (Docket Nos. 11-12).  The Court denied that motion from the bench on December 4,
2013.  (Dec. 4, 2013 Tr. (Docket No. 16) at 6-7).

Ex. A ("Complaint") ¶ 6).  The Complaint provides details with respect to three: "Victim-1," "Victim-2," and "Victim-3."  (Complaint ¶¶ 6-7).

According to the Complaint, Victim-1 first met Larsen in or about 2011 through Stephen Colangelo (who has since pleaded guilty to multiple counts of securities fraud and wire fraud in a separate case, *see United States v. Colangelo*, 12 Cr. 838 (RWS) (S.D.N.Y. Dec. 19, 2013), Docket No. 16.  (Complaint ¶ 7(a)).  Colangelo and Larsen initiated a call to Victim-1 from Colangelo's home in Rockland County, New York.  Several months later, Victim-1 gave Larsen approximately $70,000 to invest in Darwin Solar.  (*Id.* ¶¶ 7(a), 9(c))  In addition, Larsen represented to Victim-1 that he could act as Victim-1's financial advisor and would invest Victim-1's money in Facebook stock.  (*Id.* ¶ 7(a)).  Victim-1 gave Larsen $100,000 for that purpose.  (*Id.* ¶¶ 7(a), 9(c)).  Victim-1 did not receive any money back from the investments with Larsen.  (*Id.* ¶ 7(a)).

Separately, in or about the summer of 2011, Larsen met with Victim-2 in Rockland County, New York.  (*Id.* ¶ 7(b)).  During the meeting, Larsen discussed Darwin Solar with Victim-2 and provided Victim-2 with marking materials for the company.  (*Id.*).  After the meeting, Larsen contacted Victim-2 "multiple times" by telephone to solicit Victim-2's investment in Darwin Solar.  In or about December 2011, Victim-2 gave Larsen approximately $5,000 to be invested in Darwin Solar.  (*Id.*).  Although Larsen promised to provide Victim-2 with paperwork confirming the investment in Darwin Solar, he never provided any confirmation of the alleged investment.  (*Id.*).  Nor did Victim-2 receive any money back from Larsen.  (*Id.*).

The Complaint charges that, in or about late 2011, Larsen also asked Victim-3 to invest in Darwin Solar.  (*Id.* ¶ 7(c)).  Among other things, Larsen allegedly promised Victim-3 that he would likely realize thirty to forty percent gains within six to twenty-four months if Victim-3

invested in the company.  (*Id.*).  In or about December 2011, Victim-3 invested approximately

$2,500 in Darwin Solar through Larsen, but he too did not receive any money back from Larsen.

(*Id.*).  The Complaint is silent with respect to where Larsen's communications with Victim-3

took place.

     Larsen deposited the money from Victim-1, Victim-2, and Victim-3 into a bank account

at Pennstar Bank that he had opened in the name of Darwin Solar.  (*Id.* ¶ 8(a)).  (According to

Pennstar Bank's website, the bank's locations are limited to Pennsylvania.  *See* PENNSTAR BANK,

http://www.pennstarbank.com/home/Locations.html (last visited Jan. 15, 2014)).  A review of

the bank account revealed that the funds deposited were used for the purchase of a $20,000

motorcycle, various ATM withdrawals totaling over $40,000, and "tens of thousands of dollars

in restaurant expenditures, rent, grocery expenditures, personal medical expenditures, auto parts

purchases, furniture, and checks made out directly to [Larsen]."  (Complaint ¶ 8(c)).  When

questioned by a law enforcement agent, Larsen admitted, among other things, that he did not

invest the $170,000 given to him by Victim-1 in either Darwin Solar or Facebook, but instead

spent much of it on himself.  (*Id.* ¶ 9).

## DISCUSSION

     Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the

defendant's motion, the court may transfer the proceeding, or one or more counts, against that

defendant to another district for the convenience of the parties, any victim, and the witnesses,

and in the interest of justice."  Fed. R. Crim. P. 21(b).[2]  In deciding whether transfer is

---

[2]    Rule 21(b) was amended effective December 1, 2010 to include a reference to "any
victim."  The prior version (which is the version the Government quotes in its letter brief (Gov't
Letter Br. (Docket No. 14) at 1)) provided that "for the convenience of parties and witnesses,
and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as
to that defendant or any one or more of the counts thereof to another district."  The Advisory

appropriate under this provision, a district court must consider and balance the following non-exhaustive list of factors: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions in each district; and (10) any other special circumstances that might bear on the desirability of transfer. *See Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance."' *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (alteration omitted) (internal quotation marks omitted).

"As a general rule . . . a criminal prosecution should be retained in the original district in which it was filed." *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001) (internal quotation marks omitted). The defendant, therefore, bears the burden of justifying transfer in light of the *Platt* factors. *See id.*; *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.). That burden is not often or easily met: In the words of Judge Edward Weinfeld, "[t]o warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district." *United States v. United States Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1982), *quoted in United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *cf. United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C.

---

Committee Notes for the 2010 Amendments state that the change "*requires* the court to consider the convenience of victims — as well as the convenience of the parties and witnesses and the interests of justice — in determining whether to transfer all or part of the proceeding to another district for trial." Fed. R. Crim. P. 21(b) advisory committee's note (emphasis added).

2005) (citing cases and treatises in describing a "trend in recent years away from granting transfers" pursuant to Rule 21(b)).

In this case, several of the *Platt* factors do favor transfer, including most notably Larsen's residence in Lake Ariel, Pennsylvania, which is approximately 114 miles from this Courthouse; Larsen's inability to care for his children or attend his job at a pizzeria during the trial; and the expenses involved in traveling to, and staying in, this District during trial.  The first two of these factors do not weigh heavily in favor of transfer, however, especially in a case that the Government projects to last only three to five days.  (Dec. 4, 2013 Tr. at 3).  *See Platt*, 376 U.S. at 245 (stating that a defendant's residence has no "independent significance" and should not be given dispositive weight); *Wilson*, 2001 WL 798018, at *3 ("Every life is significantly disrupted during a trial wherever it is held.  Besides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of the trial."); *Posner*, 549 F. Supp. at 478 (finding that the disruption to the defendants' business did not weigh heavily in favor of transfer where trial was anticipated be "relatively brief (2-3 weeks)").  As for the expenses involved in traveling to, and staying in, this District for trial, Larsen was found to be indigent and qualified for appointed counsel and thus, one way or another, will not have to bear those expenses himself.  *See, e.g.*, *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *4 (S.D.N.Y. Aug. 7, 2000) ("[T]he ability to defend oneself should not be infringed by the inability to afford travel and accommodations." (internal quotation marks omitted)).[3]

---

[3]    The Court is mindful of the fact that the Federal Defenders of New York, Inc., Larsen's counsel, is laboring under extraordinary budget pressures due to recent (and, in this Court's view, regrettable) cuts to its funding.  In the event that Federal Defenders cannot pay for Larsen (or his witnesses) to travel to, and stay in, this District for trial, Larsen may apply for an order requiring the Government to pay those expenses.  *Cf. Spy Factory*, 951 F. Supp. at 464

5

Further, the remaining factors do not support transfer.  First, although Larsen apparently conducted some telephone calls relevant to the charges from his home in Pennsylvania, the Complaint makes clear that significant meetings and calls took place in the Southern District of New York, including the initial call to Victim-1 and a meeting with Victim-2.  In any event, whatever criminal activities may have taken place in Pennsylvania, "this was not a crime whose planning, execution, or impact was limited by geography."  *Wilson*, 2001 WL 798018, at *2. Second, although not voluminous, the relevant documents in this case are in New York, in the possession of the Government and (through discovery) Larsen's counsel.  Third, the expenses incurred from transferring the case would be greater than the expenses involved in keeping it here, as the Government would have to move its evidence and operations to Pennsylvania and Larsen would have to obtain a new lawyer with no familiarity with the case.  Fourth, counsel are located here.[4]  Fifth, New York is more readily accessible by air and other public transport.  And sixth, this Court has already scheduled trial for April 7, 2014, and — whatever the docket conditions may be in the Middle District of Pennsylvania — it is hard to imagine that transfer of the case would not result in delay of the trial.

---

(conditioning denial of the defendant's transfer motion "on the Government's 'representation to make available to the defendant, upon a good faith showing of need, reasonable funds for transportation to New York City and for subsistence for the defendant and witnesses residing in the [alternate venue] whom he may reasonably call in his defense'" (alteration in original) (quoting *United States v. Wheaton*, 463 F. Supp. 1073, 1078 (S.D.N.Y. 1979), *aff'd sub nom. United States v. Williams*, 614 F.2d 1293 (2d Cir. 1979), and citing *United States v. Haley*, 504 F. Supp. 1124, 1129 (E.D. Pa. 1981)).

[4]     It is true that, as an indigent defendant, Larsen "will have access to appointed counsel in either district" and that there is a United States Attorney's Office in the Middle District of Pennsylvania that could handle the prosecution.  (Reply Mem. (Docket No. 15) 9).  But the fact that a transfer to Pennsylvania would require the appointment of new defense counsel with no knowledge of the case and either reassignment to new prosecutors with no knowledge of the case or travel by the existing prosecution team cuts against transfer.

Seventh, Larsen has not cited any potential witnesses who would be unable or unwilling to travel to this District for trial. He merely asserts that it "seems obvious that both sides would have to call witnesses from Pennsylvania" (Reply Mem. 5).[5] But "a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *United States v. Valdes*, 05 Cr. 156 (KMK), 2006 WL 738403, at *5 (S.D.N.Y. Mar. 21, 2006) (internal quotation marks omitted). Instead, a defendant "must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial . . . . [T]he court must rely on 'concrete demonstrations' of the proposed testimony." *Id.* (internal quotation marks omitted); *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, at *5 (S.D.N.Y. Aug. 7, 1998) (stating that "there is no basis to grant" a transfer motion where the defendant "does not supply a *specific* proffer of testimony from *specific* witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case" (emphasis added)).

Finally, as noted above, Rule 21(b), as amended in 2010, expressly "requires the court to consider the convenience of victims . . . in determining whether to transfer all or part of the proceeding to another district for trial." Fed. R. Crim. P. 21(b) advisory committee's note. Although neither party addresses this new consideration (the convenience of victims is not among the *Platt* factors, except to the extent that victims may also be witnesses), it too weighs in favor of keeping the case in New York, as at least two victims "reside in the greater New York

---

[5]    By contrast, the Government has represented that "at least two of the three victim witnesses it intends to call reside in the greater New York metropolitan area"; that it is "likely" to call "a New York based individual who assisted the defendant in the creation of a fraudulent Private Placement Memorandum"; that, absent stipulations, it is likely to call "certain document custodians from entities such as E*Trade, which is headquartered in New York"; and that the case agent who will testify about Larsen's pre- and post-arrest statements "is based in New York." (Gov't Letter Br. 5).

metropolitan area" (Gov't Letter Br. 5), and there is no indication that any victim lives in or near the Middle District of Pennsylvania. (A third victim lives most of the year in Florida; for that victim, the difference is more limited, but New York City, with its three major metropolitan airports, is likely more accessible than the Middle District of Pennsylvania.) Separate and apart from geography, the alleged victims in this case also have a "right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7); *see also id.* § 3771(a)(6) (providing that a "crime victim" has "[t]he right to full and timely restitution as provided in law"). That counsels in favor of keeping the case here because transfer, as noted, would likely result in delay of the trial.

Notably, in his reply memorandum of law, Larsen repeatedly argues that the Government has failed to show that one or the other of the *Platt* factors supports prosecution in this District. (Reply Mem. 5-6, 8-10). Critically, however, it is not *the Government's* burden to prove that transfer is unwarranted, but *Larsen's* burden to prove that fairness requires transfer. *See Posner*, 549 F. Supp. at 477. He has not carried that burden. *See, e.g., United States v. Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying a motion to transfer venue on similar grounds even though the trial was projected to last significantly longer than the trial in this case).

## CONCLUSION

For the foregoing reasons, Larsen's motion to transfer venue is DENIED. The Clerk of Court is directed to terminate Docket No. 11.


SO ORDERED.

Dated:   January 16, 2014
         New York, New York                    _____
                                               JESSE M. FURMAN
                                               United States District Judge
.

8