UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | 13 Cr. 688 (JMF) |
| TORE LARSEN, | : | |
| Defendant. | : | |

------------------------------------------------------------x

## THE GOVERNMENT'S SENTENCING MEMORANDUM

                                                PREET BHARARA
                                                United States Attorney
                                                Southern District of New York
                                                Attorney for the United States of America

Brooke E. Cucinella
Assistant United States Attorney
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA           :

   -v.-                                              :           13 Cr. 688 (JMF)

TORE LARSEN,                                   :

                      Defendant.           :

------------------------------------------------------------x

**Preliminary Statement**

      Tore Larsen, the defendant in the above-captioned case, is scheduled to be sentenced on August 27, 2014, at 3:00 p.m. The Government respectfully submits this memorandum in advance of sentencing. As set forth in the March 13, 2014 plea agreement pursuant to which the defendant pled guilty (the "Plea Agreement"), the Government and the defendant agreed to a stipulated United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 21 to 27 months' imprisonment.[1] Because of the egregious nature of the defendant's conduct here—which includes not only manipulating and taking advantage of an elderly woman in the early stages of dementia, but the creation of fake documents, including stock certificates and a Private Placement Memorandum to perpetrate this fraud—the Government respectfully submits that the Court should impose a sentence within the stipulated Guidelines range in this case.

---

[1] The Guidelines range calculated by the Probation Department adds an additional two points because Larsen's conduct is in violation of a prior judicial decree. While the Government is in agreement with the Guidelines calculation in the PSR, it abides by the terms of the plea agreement, and is not advocating here for a sentence outside of the stipulated Guidelines range of 21 to 27 months' imprisonment.

## BACKGROUND

A.  **Offense Conduct**

As described in detail in the PSR, beginning in 2011, the defendant began to fraudulently solicit "investments" in a company called Darwin Solar, Inc. ("Darwin Solar"). One of the first people that Larsen solicited money from was an elderly woman, Gertrude Stevens, whose contact information he received from Steven Colangelo, an individual who was recently sentenced in this district for an unrelated securities fraud matter. Colangelo introduced Ms. Stevens to Larsen over the phone, during a call made from Colangelo's residence in Rockland County, and provided to Larsen a binder with additional contact information for Stevens and other potential investors. Significantly, as reported to the FBI by Larsen himself, Colangelo told Larsen that Stevens was "forgetful."

In connection with this scheme, Larsen hired a printing company located in Manhattan, New York, to produce a private placement memorandum (the "PPM") that falsely stated, among other things, how "investment" money would be spent, and listed company officers and employees who had no involvement with the company—many of whom were simply Larsen's family members, and never did any work for the purported company. A copy of this PPM, which was provided to the FBI by Ms. Stevens, is attached as Exhibit A. Larsen distributed the PPM to potential investors, including Ms. Stevens—her handwritten notes, taken during conversations with Larsen, appear on the cover page of Exhibit A. Larsen ultimately successfully solicited a total of $84,500 from three victims in connection with his Darwin Solar scheme. In return for MS. Stevens' investment in Darwin Solar, Larsen provided her with stock "certificates" which purported to represent "shares" in his company. An example of a certificate he provided to Ms. Stevens is attached as Exhibit B, and a letter he sent confirming her "5%

equity stake in the company," which he claimed was "vastly progressing," is attached at Exhibit C. Of course, this was all lies. Larsen did not spend this money as promised, nor did he take steps to develop the new solar technology that he had pitched to his investors, much less the company itself. Rather (by his own admission), Larsen took his victim's investment money and he paid himself a "salary"—put another way, he used their money to pay his rent, his phone expenses, and expenses to further perpetuate his scheme (including additional copies of the PPM).

And Tore Larsen did not stop with Darwin Solar. In soliciting money from Ms. Stevens for the Darwin Solar scheme, he represented to her that he could be a financial advisor to her, and that if she gave him $100,000, he would invest it in Facebook Stock. Ms. Stevens wired him and the money—but, of course, Larsen did not invest it as promised. He spent it. He told the FBI that he spent it on a motorcycle, and on personal expenses—for the most part, Larsen could not remember exactly what he spent it on (but it was not Facebook stock). A review of his bank records shows that he withdrew close to $40,000 in cash via ATM machines, and that he wrote checks for cash to himself and paid his rent, as well as bought things like groceries, dinners out, and furniture. Indeed, the "investments" in Darwin Solar and Ms. Stevens' purported "investment" in Facebook accounted for almost all of Larsen's income from 2011 to 2012. And while he was spending this money as if it was his own, he was reporting back false returns to Ms. Stevens, on the Facebook stock he had purportedly purchased for her. In a letter dated May 31, 2012, Larsen reported that MS. Stevens' Facebook investment had earned her a profit of $22,642; he then went on to suggest that she consider purchasing additional shares in Darwin Solar for her sister, and her grandchildren. A copy of this letter is attached hereto as Exhibit D.

4

In defendant's sentencing submission, he accurately reports that after he was approached by the FBI, he was helpful in providing location information for Colangelo and providing, for the most part, accurate information about the schemes in which Larsen engaged.  He also stated to law enforcement agents, however, that he intended to sell the motorcycle he bought with Ms. Stevens money and pay her back, to make amends—steps he never actually took.

**B.**     **The Defendant's Criminal History**

The defendant has one criminal history point, and is therefore in Criminal History Category I.  This point is the result of a 2012 conviction for Driving Under the Influence of Alcohol and, although it is the only conviction that warrants criminal history points, as noted in the PSR, it was not the defendant's first conviction.  Rather, the defendant had multiple additional convictions for driving under influences, as well as youthful offender conviction for criminal possession of a firearm.

**C.**     **The Defendant's Stipulated Offense Level**

As noted above, the parties entered into a Plea Agreement and stipulated to the defendant's offense level and Criminal History Category.  As detailed in the Plea Agreement, pursuant to U.S.S.G. § 3D1.2(b), (d), Counts Two and Four are grouped together as one, and pursuant to U.S.S.G. § 2B1.1(a), the base offense level for the grouped counts is 7.  Because the loss exceeded $120,000, but was not more than $200,000, a 10-level increase is warranted. Additionally, because Ms. Stevens was a vulnerable victim, as contemplated by U.S.S.G. § 3A1.1(b)(1), and because Larsen was aware of that fact at the time he solicited money from her, he receives a  2-level increase.  Finally, because Larsen demonstrated acceptance of responsibility to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction is appropriate, and the

Government moves for an additional 1-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The parties and probation are in agreement that the subtotal of the defendant's criminal history score to be 1, resulting in a Criminal History Category of I. (PSR ¶ 29-30.) Accordingly, as stated in the Plea Agreement, the defendant's stipulated Guidelines range is 21 to 27 months of imprisonment. Probation, however, has correctly noted that at the time Larsen engaged in the offense conduct here, he was under a judicial order not to violate the securities laws, and thus a 2-level increase is warranted, which would increase Larsen's Guidelines range to 27 to 33 months' imprisonment.

E.   **The Probation Office Recommendation**

The Probation Office has recommended a sentence of 27 months, to be followed by three years' supervised release.

## DISCUSSION

A.   **A Guidelines Sentence Is Warranted in this Case.**

The fraud perpetrated by the defendant in this case was egregious—in a number of ways. Tore Larsen stole from three people. One of those people was an elderly woman who was suffering from the early stages of dementia—she was vulnerable, and the defendant knew it. And he exploited it for no other reason than to personal profit: to pay his own bills; to go out to eat; to buy a motorcycle. He falsified documents, he made promises he could not possibly deliver on, and he did it simply because he could. As detailed further below, the defendant's fraudulent conduct here was flagrant and thus, in light of the nature and circumstances of the instant offense, a Guidelines sentence is appropriate.

The § 3553(a) factors applicable here include the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence to this defendant and other similarly situated individuals, to promote respect for the law, and to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These considerations weigh in favor of a sentence within the applicable Guidelines range.

First, a sentence within the Guidelines range is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A). The defendant's conduct here went far beyond simply making misrepresentations about the nature or quality of an investment. As detailed in the offense conduct section, above, Larsen preyed upon Ms. Stevens and her vulnerable state. He took advantage of her by pretending to befriend her and pretending that he had not only her best interests, but—as evident in his May 31, 2012 letter, in which he falsely reports her gains in Facebook stock—the best interests of her grandchildren in mind. Ms. Stevens reported to the Government that being taken advantage of in this way undermined her confidence to live home, alone, and to manage her own affairs. As a result, she has moved in with family, leaving the home she believed she would live until she dies. Larsen's crime took from Ms. Stevens not only her money, but a piece of her dignity. A Guidelines sentence here would justly punish the serious nature of this crime.

Second, a substantial sentence is necessary to afford adequate deterrence to the defendant and others similarly situated, as well as to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) & (C). Although the defendant has only one criminal history point, this understates his involvement in prior fraudulent schemes, and specifically, in securities fraud. As the Court is aware, the defendant was previously arrested in connection with a securities fraud scheme, and in fact entered into a civil settlement in which he was under a

judicial order not to violate the securities laws again. He nonetheless engaged in these schemes, knowing full well that what he was doing was wrong. Accordingly, specific deterrence is required here.

General deterrence is also required. As the Court is aware, crimes of this nature are difficult to detect and prosecute, even though the impact on victims is often devastating. That means that when an individual who commits these types of fraud is identified and convicted, a substantial sentence should be imposed to deter others from making the same choice. *See, e.g.*, *United States* v. *Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' (quoting Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (alteration in original)); *United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, *The Deterrent Effects of Prison: Evidence From a Natural Experiment*, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence."); *cf. United States* v. *Naseem*, 07 Cr. 610 (S.D.N.Y. May 30, 2008) (Patterson, J.) ("This kind of conduct has been prosecuted before and it doesn't seem to deter people very much. So that is a strong reason to adhere to the guideline calculation[.]").

For all of the foregoing reasons, a Guidelines sentence is appropriate here.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence is necessary to reflect the seriousness of the offense, promote respect for the law, and protect the public. As a result, the Government requests that the Court impose a sentence within the stipulated Guidelines range of 21 to 27 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated: New York, New York
      August 21, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    /s/
Brooke E. Cucinella
Assistant United States Attorney
(212) 637-2477